** PART I **
RE: CAN A MUNICIPALITY APPROPRIATE AND EXPEND ITS GENERAL FUND MONIES FOR THE CONSTRUCTION OF SIDEWALKS OR REPAIR OF SIDEWALKS?
THE ATTORNEY GENERAL HAS ASKED ME TO RESPOND TO YOUR QUESTION IN THE ABOVE-REFERENCED MATTER. AFTER REVIEWING THE QUESTION AND THE CLEARLY APPLICABLE LAW, IT APPEARS THAT THE ISSUANCE OF A FORMAL OPINION IS UNNECESSARY. HOPEFULLY, THIS INFORMAL OPINION WILL BE OF SOME ASSISTANCE TO YOU.
INTRODUCTION
YOUR QUESTION DOES NOT SPECIFY WHAT "TYPE" OF MUNICIPALITY IS INVOLVED THEREIN. OKLAHOMA LAW RECOGNIZES TWO GENERAL TYPES OF MUNICIPALITIES: A "STATUTORY" MUNICIPALITY AND A "CHARTER" MUNICIPALITY. A "STATUTORY" MUNICIPALITY IS ONE ORGANIZED AND GOVERNED IN ACCORDANCE WITH THE PROVISIONS OF 11 O.S. 9101 THROUGH 11 O.S. 9-118 (1981) (ALDERMANIC); 11 O.S. 10-101 THROUGH 11 O.S. 10-121 (COUNCIL/MANAGER); 11 O.S. 11-101 THROUGH 11 O.S. 11-125 (STRONG MAYOR-COUNCIL); OR 11 O.S. 12-101 THROUGH 11 O.S. 12-114 TOWN BOARD OF TRUSTEES). A "CHARTER" MUNICIPALITY IS A MUNICIPALITY WHICH HAS ADOPTED A CHARTER IN ACCORDANCE WITH ARTICLE XVIII, SECTION 3(A) AND THE LAWS OF OKLAHOMA AND, AT THE TIME OF ADOPTION OF THE CHARTER, HAD A POPULATION OF 2,000 INHABITANTS OR MORE. 11 O.S. 1-102(1) (1990).
THE DISTINCTION BETWEEN THE TWO TYPES OF MUNICIPALITIES IS OFTEN IMPORTANT BECAUSE THE POWERS OF EACH ARE QUITE DIFFERENT. FOR EXAMPLE, A "STATUTORY" MUNICIPALITY HAS NO INHERENT POWER OR AUTHORITY. A.G. OPIN. NO. 87-112. IT POSSESSES AND CAN EXERCISE ONLY THOSE POWERS EXPRESSLY GRANTED, OR INCIDENTAL TO POWERS EXPRESSLY GRANTED BY THE STATE-CITY OF HARTSHORNE V. MARATHON OIL CO., 593 P.2D 97,99 (OKLA-1979); SHIPP V. SOUTHEASTERN OKLA. INDUSTRIES AUTHORITY, 498 P.2D 1395 (OKLA-1972). SIMPLY PUT, THE POWERS OF NON-CHARTER OR "STATUTORY" MUNICIPALITIES ARE SUCH AS ARE EXPRESSLY GRANTED OR NECESSARILY IMPLIED FROM A STATUTE. MOREHEAD V. DYER, 518 P.2D 1105, 1107 (OKLA. 1973). FURTHERMORE, LEGISLATIVE GRANTS OF POWERS TO MUNICIPALITIES ARE STRICTLY CONSTRUED BY THE COURTS. CITY OF MCALESTER V. GRAND UNION TEA CO., 98 P.2D 924 (OKLA. 1940).
ON THE OTHER HAND, ONCE A MUNICIPAL CHARTER HAS BEEN ADOPTED AND APPROVED, IT BECOMES THE ORGANIC LAW OF THE MUNICIPALITY IN ALL MATTERS PERTAINING TO THE LOCAL GOVERNMENT OF THE MUNICIPALITY AND PREVAILS OVER STATE LAW ON MATTERS RELATING TO PURELY MUNICIPAL CONCERNS. 11 O.S. 1-102(1) (1990). THIS PRINCIPLE IS ALSO WELL-ESTABLISHED IN THE COURTS. SEE OLIVER V. CITY OF TULSA, 654 P.2D 607, 609 (OKLA. 1982). WHERE THE AREA UNDER CONSIDERATION IS ONE OF VALID MUNICIPAL CONCERN, THE MUNICIPALITY, ACTING UNDER ITS CHARTER, IS AFFORDED THE FULL RANGE OF SELF-GOVERNMENT IN EXERCISING AND ENFORCING ITS POLICE POWER TO PROTECT PUBLIC HEALTH, SAFETY, AND MORALS, SUBJECT TO CONSTITUTIONAL AND STATUTORY LIMITATIONS. SANDERS, "CONSTITUTIONAL LAW: MUNICIPAL ORDINANCE REGULATING NUDITY IN PRIVATE CLUBS," 3 O.C.U. L. REV. 107 (1978). CHARTER MUNICIPALITIES, HOWEVER, CANNOT SUPERSEDE STATE LAWS WHERE SUCH LAWS ARE OF GENERAL CONCERN. IN OTHER WORDS, GENERAL LAWS OF STATEWIDE CONCERN, ESPECIALLY THE CONSTITUTION, CONTROL OVER A CONFLICTING CITY CHARTER. SUBLETT V. CITY OF TULSA, 405 P. 2D 185 (OKLA. 1965).
NOTWITHSTANDING THE DISTINCTION BETWEEN THE POWERS OF A "STATUTORY" MUNICIPALITY VERSUS A "CHARTER" MUNICIPALITY, YOUR QUESTION RELATES SPECIFICALLY TO THE EXPENDITURE OF GENERAL FUND MONIES BY A MUNICIPALITY. AS WILL BE DISCUSSED BELOW, SUCH EXPENDITURES ARE GOVERNED BY A VARIETY OF CONSTITUTIONAL PROVISIONS AND STATE STATUTES WHICH WOULD SUPERSEDE ANY CONTRARY CHARTER PROVISIONS. ARTHUR V. CITY OF STILLWATER, 611 P.2D 637, 642 (OKLA. 1980). FOR THAT REASON, THE ENSUING DISCUSSION WOULD BE APPLICABLE TO EITHER TYPE OF MUNICIPALITY RECOGNIZED UNDER OKLAHOMA LAW.
HE POWER OF A MUNICIPALITY TO EXPEND MONIES IN ITS GENERAL FUND FOR THE PURPOSE OF CONSTRUCTING OR REPAIRING SIDEWALKS
WHAT IS A SIDEWALK, IN THE LEGAL SENSE? A PROVISION OF OKLAHOMA'S HIGHWAY SAFETY CODE PROVIDES THAT A SIDEWALK IS "THAT PORTION OF A STREET BETWEEN THE CURB LINES, OR THE LATERAL LINES OF A ROADWAY, AND THE ADJACENT PROPERTY LINES, INTENDED FOR USE OF PEDESTRIANS." 47 O.S. 1981, 1-163. THE OKLAHOMA SUPREME COURT FOUND THAT: A SIDEWALK DOES NOT NECESSARILY CONSIST OF A WALK MADE OF BOARDS, OR A PLACE PAVED OR OTHERWISE IMPROVED, FOR THE USE OF FOOT PASSENGERS; BUT IT MAY BE A PLACE SET APART THE SIDE OF THE STREET FOR THE USE OF THAT PORTION OF THE PUBLIC THAT TRAVELS ON FOOT. (CITATIONS OMITTED). CITY OF DUNCAN V. WOODS, 151 P.2D 923 (OKLA. 1944).
AS TO THE CONSTRUCTION OR REPAIR OF SIDEWALKS, MUNICIPALITIES POSSESS A WEALTH OF EXPRESS POWERS. THE STATUTE WHICH LISTS THE GENERAL POWERS OF A MUNICIPALITY PROVIDES, IN PART:
 "THE TITLE TO STREETS, ROADS AND PUBLIC WAYS WITHIN THE LIMITS OF A MUNICIPALITY WHICH HAVE BEEN DEDICATED AND ACCEPTED BY THE MUNICIPAL GOVERNING BODY IS HELD BY THE MUNICIPALITY IN TRUST FOR PUBLIC USE AND ENJOYMENT.
* * *
A MUNICIPAL GOVERNING BODY MAY, IN THE MANNER PROVIDED BY LAW:
 6. CONSTRUCT, RECONSTRUCT, RAISE, LOWER, WIDEN OR REPAIR SIDEWALKS; 11 O.S. 36-101(6) (1981).
NOT ONLY DOES A MUNICIPALITY HAVE THE EXPRESS POWER TO CONSTRUCT OR REPAIR SIDEWALKS WITHIN ITS BOUNDARIES, THE OKLAHOMA SUPREME COURT HAS SAID THAT IT HAS THE PRIMARY DUTY OF KEEPING AND MAINTAINING ITS SIDEWALKS IN REASONABLY SAFE CONDITION FOR THE TRAVELING PUBLIC. OKLAHOMA CITY V. PRIETO, 482 P.2D 919 (OKLA. 1970). IN THE PERFORMANCE OF THIS DUTY, THE MUNICIPALITY HAS WIDE DISCRETION AND THE COURTS WILL NOT INTERFERE IN THE ABSENCE OF GROSS ABUSE. CITY OF ADA V. BURROW, 42 P.2D 111 (OKLA. 1935).
ANOTHER STATUTE EMPOWERS A MUNICIPALITY WITH THE ABILITY TO, BY RESOLUTION, DECLARE AN EMERGENCY AS TO THE CONDITION OF A SIDEWALK, AND THEN TO DIRECT THE OWNER OF THE PROPERTY TO MAKE THE EMERGENCY REPAIRS WITHIN 3 DAYS. 11 O.S. 36-104 (1981). IF THE OWNER FAILS TO DO SO, THE MUNICIPALITY MAY PROCEED TO MAKE THE REPAIRS, WITHOUT ADVERTISEMENT, AND MAY SUBSEQUENTLY CAUSE AN ASSESSMENT AGAINST THE OWNER FOR THE COST OF THE REPAIRS. ID.
THE STATUTES ALSO PROVIDE A VARIETY OF FUNDING MECHANISMS FOR THE CONSTRUCTION OR REPAIR OF SIDEWALKS IN A MUNICIPALITY. ONE STATUTE ALLOWS A MUNICIPALITY TO ISSUE OR SELL BONDS IN THE SAME MANNER AS ISSUING BONDS FOR CAPITAL IMPROVEMENTS IN ORDER TO FUND CONSTRUCTION, REPAIR OR GRADING OF SIDEWALKS. 11 O.S. 36-103(1) (1990). THAT SAME STATUTE ALSO PROVIDES THAT A MUNICIPALITY MAY MAKE ASSESSMENTS ON ALL LOTS AND PIECES OF GROUND ABUTTING THE IMPROVEMENT, IN ORDER TO FUND THE GRADING, PAVING OR BUILDING OF THE SIDEWALK. 11 O.S. 36-103(2).
NOTWITHSTANDING THAT THE STATUTES DO EXPRESSLY EMPOWER A MUNICIPALITY TO CONSTRUCT OR REPAIR ITS SIDEWALKS AND ALSO AUTHORIZE THE FOREGOING METHODS FOR FUNDING THE SAME, YOUR QUESTION SPECIFICALLY ASKS WHETHER A MUNICIPALITY CAN UTILIZE THE PROCEEDS IN ITS GENERAL FUND TO ACCOMPLISH SUCH PROJECTS. TO ANSWER THIS QUESTION, BOTH THE OKLAHOMA CONSTITUTION AND CERTAIN STATE STATUTES, AS WELL AS THE CONSTRUCTION OF BOTH BY THE OKLAHOMA SUPREME COURT, MUST BE ANALYZED.
ARTICLE X, SECTION 14 OF THE OKLAHOMA CONSTITUTION PROVIDES, IN PART, THAT "TAXES SHALL BE LEVIED AND COLLECTED BY GENERAL LAWS, AND FOR PUBLIC PURPOSES ONLY . . ." THIS PROVISION HAS BEEN HELD TO MEAN THAT PUBLIC FUNDS MAY NOT BE USED TO ASSIST INDIVIDUALS OR PRIVATE ORGANIZATIONS IN THEIR BUSINESS FUNCTIONS. VETERANS OF FOREIGN WARS V. CHILDERS, 171 P.2D 618 (OKLA. 1946); VETTE V. CHILDERS, 228 P. 145 (OKLA. 1921). ALSO, ARTICLE X, SECTION 17 SPECIFIES THAT THE "LEGISLATURE SHALL NOT AUTHORIZE ANY . . . CITY (OR) TOWN . . . TO OBTAIN OR APPROPRIATE MONEY FOR, OR LEVY ANY TAX FOR . . . ANY CORPORATION, ASSOCIATION, OR INDIVIDUAL."
AS APPLIED TO YOUR QUESTION, THESE CONSTITUTIONAL PROVISIONS WOULD PROHIBIT THE EXPENDITURE OF GENERAL FUND MONIES FOR THE CONSTRUCTION OR REPAIR OF SIDEWALKS IF SUCH EXPENDITURE WAS NOT FOR A PUBLIC PURPOSE AND/OR IF SUCH EXPENDITURE WAS, IN ESSENCE, AN APPROPRIATION OF TAX MONIES FOR A CORPORATION, ASSOCIATION OR INDIVIDUAL. IN 1983, THE OKLAHOMA SUPREME COURT RULED, IN NO UNCERTAIN TERMS, THAT PURSUANT TO THE FOREGOING CONSTITUTIONAL PROVISIONS, EXPENDITURE OF TAX DOLLARS MUST BE FOR A PUBLIC PURPOSE, WHICH IS SYNONYMOUS WITH GOVERNMENT PURPOSE. STATE EX REL. LACY V. JACKSON, 682 P. 2D 218, 220 (OKLA. 1983). THE COURT, IN COMMENTING ON WHAT WAS A PUBLIC PURPOSE, STATED:
 IT IS UNDOUBTEDLY THE DUTY OF THE LEGISLATURE WHICH IMPOSES OR AUTHORIZES MUNICIPALITIES TO IMPOSE A TAX, TO SEE THAT IT IS NOT TO BE USED FOR PURPOSES OF PRIVATE INTEREST INSTEAD OF A PUBLIC USE, AND THE COURTS CAN ONLY BE JUSTIFIED IN INTERPOSING WHEN A VIOLATION OF THIS PRINCIPLE IS CLEAR AND THE REASON FOR INTERFERENCE COGENT. AND IN DECIDING WHETHER, IN THE GIVEN CASE, THE OBJECT FOR WHICH THE TAXES ARE ASSESSED FALLS UPON THE ONE SIDE OR THE OTHER OF THIS LINE, THEY MUST BE GOVERNED MAINLY BY THE COURSE AND USAGE OF THE GOVERNMENT, THE OBJECTS FOR WHICH TAXES HAVE BEEN CUSTOMARILY AND BY LONG COURSE OF LEGISLATION LEVIED, WHAT OBJECTS OR PURPOSES HAVE BEEN CONSIDERED NECESSARY TO THE SUPPORT AND FOR THE PROPER USE OF THE GOVERNMENT, WHETHER STATE OR MUNICIPAL. WHATEVER LAWFULLY PERTAINS TO THIS AND IS SANCTIONED BY TIME AND THE ACQUIESCENCE OF THE PEOPLE MAY WELL BE HELD TO BELONG TO THE PUBLIC USE, AND PROPER FOR THE MAINTENANCE OF GOOD GOVERNMENT, THOUGH THIS MAY NOT BE THE ONLY CRITERION OF RIGHTFUL TAXATION. (CITATIONS OMITTED). ID. AT 221.